```
                  UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF RHODE ISLAND
_____
                                    )
HERADIO MIGUEL RAMIREZ ZAVALA,      )
                                    )
     Petitioner,                    )
                                    )
          v.                        )   C.A. No. 21-500 WES
                                    )
DANIEL W. MARTIN, in his capacity   )
as Warden of the                    )
Donald W. Wyatt Detention Facility, )
                                    )
     Respondent.                    )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge.

Before the Court is an Opposition to Petition for Writ of Habeas Corpus and Motion to Dismiss,[1] filed by Todd M. Lyons,[2]

---

[1] The Government presented its arguments in the form of a motion to dismiss, or, in the alternative, motion for summary judgment. Because the Court considers facts outside the Petition, it will construe the motions before it as cross-motions for summary judgment.

[2] Director Lyons, in his capacity as field office director for Immigration and Customs Enforcement ("ICE"), is not technically named in the Petition as a Respondent. Rather, Warden Martin is named in the Petition because he has day-to-day control over the facility at which Petitioner is detained at ICE's direction. See Garcia v. McDonald, No. 16-cv-11673-ADB, 2016 WL 8679219, at *1 n.1 (D. Mass. Sept. 23, 2016) (noting that the sheriff of the petitioner's detention facility had day-to-day control of the petitioner through an agreement with ICE and therefore was the nominal respondent in the action). The Government filed the present motion in response to "the Court's December 24, 2021 Order and [given] the ICE policy issues implicated by this action." Gov't Opp'n to Pet. for Writ of Habeas Corpus and Mot. to Dismiss 1 n.1, ECF No. 4. The Court takes the appearance and argument by Director Lyons as an acknowledgement

Field Office Director for United States Immigration and Customs Enforcement (hereinafter, "Government"), ECF No. 4, and a Cross-Motion for Summary Judgment, filed by Petitioner, Heradio Miguel Ramirez Zavala, ECF No. 7.  For the reasons stated herein, Petitioner's Cross-Motion for Summary Judgment, ECF No. 7, is GRANTED; the Government's Motion to Dismiss, ECF No. 4, is DENIED; and Petitioner's § 2241 Petition, ECF No. 1, is ALLOWED, in part, and DENIED, in part.

I.   BACKGROUND

In 2005, Petitioner, a Nicaraguan national, attempted to enter the United States and was issued a removal order and repatriated to Nicaragua.  Statement of Undisputed Facts in Supp. Of Pet'r's Cross-Mot. Summ. J. ("Pet'r's SUF") ¶ 1, ECF No. 8.  Petitioner entered the country again in April of 2021 and was detained by United States Customs and Border Patrol shortly after entry, on or about April 12, 2021.  Id. ¶¶ 2-3.  Petitioner had been held at York County Jail in Pennsylvania from the date of his apprehension until transfer to Wyatt Detention Facility following

---

that ICE will follow this Court's directive, although the Warden is named as the Respondent. See Bourguignon v. MacDonald, 667 F. Supp. 2d 175, 180 (D. Mass. 2009) (dismissing the Secretary of the Department of Homeland Security from the action but accepting certain statements by counsel at oral argument as "a commitment to follow the order of th[e] court . . . mandating a bond hearing before an IJ, without interposing the technical defense that [the Secretary of DHS] is no[t] in the case").

York County Jail's closure in August 2021. Pet'r's SUF ¶¶ 3-6.

While detained at York County, an Asylum Officer interviewed Petitioner and determined that he expressed a reasonable fear of persecution or torture if he returned to Nicaragua. Id. ¶ 4. The Asylum Office referred the matter to the Executive Office for Immigration Review ("EOIR") to be reviewed. Id. Petitioner thereafter pursued withholding of removal relief in York Immigration Court. Id. ¶ 5-6. A final hearing was initially scheduled in that court for August 2, 2021, but was canceled due to Petitioner's transfer. Id. Subsequently, a final hearing for adjudication of Petitioner's case occurred in Boston Immigration Court on October 28, 2021; Petitioner's request was denied by an Immigration Judge. Id. ¶ 7. Petitioner appealed the October 28, 2021 denial to the Board of Immigration Appeals ("BIA"). Id. ¶ 8. That appeal remains pending. Id. ¶ 8.

On December 22, 2021, Mr. Ramirez Zavala filed a Petition for Writ of Habeas Corpus pursuant to § 2241 asserting claims for unlawful detention under the Fifth Amendment to the United States Constitution and 8 U.S.C. § 1231. Pet. for Writ. of Habeas Corpus 7-8, ECF No. 1. Petitioner alleges that he is entitled to an impartial determination setting forth the reasons for this ongoing detention and that an impartial decision maker has not found him to be a flight risk or danger to the community. Id. ¶ 55-56, 59-60. He seeks three alternative avenues for relief: (A) immediate

3

release; (B) an order requiring release unless Petitioner receives a hearing within 14 days before the EOIR at which the Government bears the burden of establishing dangerousness or flight risk; or (C) an order requiring release unless Petitioner receives a hearing within 14 days before the EOIR "that otherwise complies with the Immigration and Nationality Act and the Fifth Amendment." Id. at 8.

On January 5, 2022, Warden Martin and the Government filed responses to the Petition. Warden Martin submitted a notice stating that he takes no position on the Petition. See Warden Statement, ECF No. 5. The Government filed an Opposition to Petition for Writ of Habeas Corpus and Motion to Dismiss, or, in the alternative, Motion for Summary Judgment. Petitioner filed a Cross-Motion for Summary Judgment on January 14, 2022.

## II. LEGAL STANDARD

"Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Walker v. President and Fellows of Harvard Coll., 840 F.3d 57, 61 (1st Cir. 2016) (quoting Farmers Ins. Exch. V. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011)). "Cross-motions for summary judgment do not alter the summary judgment standard, but instead simply 'require [the Court] to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed.'" Wells Real

4

Estate Inv. Tr. II, Inc. v. Chardon/Hato Rey P'ship, S.E., 615 F.3d 45, 51 (1st Cir. 2010) (quoting Adria Int'l Group, Inc. v. Ferré Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001)).

Petitioner has sought relief pursuant to 28 U.S.C. § 2241, which is the proper procedural vehicle "for statutory and constitutional challenges to post-removal-period detention." Zadvydas v. Davis, 533 U.S. 678, 688 (2001).

III. IMMIGRATION LAW FRAMEWORK

Pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a)(5), if a noncitizen has "reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed . . . [.]" In such cases, while this provision "generally foreclos[es] discretionary relief from the terms of the reinstated order," Fernandez-Vargas v. Gonzalez, 548 U.S. 30, 35 (2006), a noncitizen may still "pursu[e] withholding-only relief to prevent [the Department of Homeland Security] from executing his removal to the particular country designated in his reinstated removal order," Johnson v. Guzman Chavez, 141 S.Ct. 2271, 2282 (2021).

Section 1231(a) governs the detention, release, and removal of noncitizens subject to reinstated orders of removal and seeking withholding only relief. Id. at 2284. Once a noncitizen is

5

ordered removed, the Attorney General "shall remove" the individual within a period of 90 days, during which time detention is mandatory. See § 1231(a)(1)-(2). Beyond 90 days, a noncitizen may still be subject to detention under § 1231(a)(6). Section 1231(a)(6) provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

(Emphasis added).

Under its regulations, the Department of Homeland Security provides for periodic review of its custody determinations. See 8 C.F.R. 241.4(k)(2)(iii) ("A subsequent review shall ordinarily be commenced for any detainee within approximately one year of a decision by the Executive Associate Commissioner declining to grant release. Not more than once every three months in the interim between annual reviews, the alien may submit a written request . . . for release consideration based on a proper showing of a material change in circumstances since the last annual review.")

IV. DISCUSSION

Petitioner contends that his prolonged detention without a hearing before a neutral decisionmaker as to the propriety of that detention violates § 1231(a)(6) or the Fifth Amendment Due Process

6

Clause.  Mem. of Law in Supp. Of Pet'r's Cross-Mot. for Summ. J. and in Opp'n to Director Lyons's Mot. to Dismiss ("Pet'r's Cross-Mot.") 9, ECF No. 7-1.  He urges the Court to apply the balancing test set forth by the Supreme Court in Mathews v. Eldridge, 424 U.S. 319 (1976), to find that the Department of Homeland Security's[3] ("DHS") procedures do not provide sufficient safeguards for his procedural due process rights.  Id. at 8-12; Reply Mem. in Supp. of Pet'r's Cross-Mot. Summ. J. ("Pet'r's Reply") 2-3, ECF No. 11.  He argues that his detention is unreasonable because "a system of detention in which a prosecutor also plays the role of neutral magistrate and, in doing so, detains the subject of his prosecution for 9 months cannot be reasonable."  Pet'r's Reply 5.  Petitioner asserts that he has a "unique set of circumstances . . . which do not apply to most noncitizens with final removal orders" because he has articulated a reasonable fear of persecution if returned to his home country and is pursuing defenses to removal.  Pet'r's Reply 6.

The Government, on the other hand, argues that neither § 1231 nor the United States Constitution entitle Petitioner to a bond hearing.  Opp'n to Pet. for Writ of Habeas Corpus and Mot. to Dismiss ("Gov't Mot.") 10-18; see Reply in Supp. Federal Resp't's

---

[3] "Congress has . . . empowered the Secretary of Homeland Security to enforce the Immigration and Nationality Act."  Guzman Chavez, 141 S.Ct. at 2280 n.1.

7

Mot. to Dismiss and Opp'n to Pet'r's Cross-Mot. for Summ. J. ("Gov't Reply") 2-5, ECF No. 9. It further contends that Petitioner seeks more process than those not yet removed for the first time or not yet ordered removed, but subject to mandatory detention, which would be "illogical and incongruous" with Supreme Court and First Circuit precedent. Gov't Reply 7, 8. Even if the Court were to review the Department of Homeland Security's regulatory scheme to determine if Petitioner's procedural due process rights have been protected, the Government argues, it should find that the regulations pass constitutional muster. Id. at 8-11.

In Zadvydas, the Supreme Court found that § 1231(a)(6) "does not permit indefinite detention." 533 U.S. at 689. Rather, "read in light of the Constitution's demands, [the statute] limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Id. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. The Court held that a six-month period for detention is presumptively reasonable and constitutional. Id. at 701. This presumption does not trigger a per se release of every detainee at the six-month mark; "[t]o the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable

8

future." Id. (emphasis added). Petitioner here makes clear that he is not asserting a substantive Zadvydas claim; that is, he does not argue that his removal is not reasonably foreseeable. Pet'r's Cross-Mot. 9 n.5. Rather, Petitioner argues that he has been detained for a prolonged period of time without sufficient process to safeguard his constitutional rights. Id.

Faced with similar factual circumstances, the Third and Ninth Circuits found that petitioners detained pursuant to § 1231(a)(6) for longer than six months are generally entitled a bond hearing before an immigration judge. Guerrero-Sanchez v. Warden York County Prison, 905 F.3d 208, 225 (3rd Cir. 2018); Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011). In Guerrero-Sanchez, the Third Circuit held that although the Supreme Court in Zadvydas "narrowed the scope of detention that § 1231(a)(6) authorizes" it did not "preclude courts from construing §1231(a)(6) to include additional procedural protections during the statutorily authorized detention period, should those protections be necessary to avoid detention that could raise different constitutional concerns." 905 F.3d at 221 (emphasis in original).

The Third Circuit, relying in large part on the Ninth Circuit's reasoning in Diouf, found "no substantial distinction" between the liberty interest of persons detained pursuant to § 1226(a) and those detained pursuant to § 1231(a)(6); it further

9

concluded that "[t]he distinctions between § 1226(a) and § 1231(a)(6) . . . are not substantial enough to justify denying a bond hearing to all aliens subject to extended detention under § 1231(a)(6)." Id. at 222, 223 (quoting Diouf, 634 F.3d at 1087). Invoking the canon of constitutional avoidance, the court read an implicit limit into § 1231(a)(6) that "an alien facing prolonged detention under [that provision] is entitled to a bond hearing before an immigration judge and is entitled to be released from detention unless the government establishes that the alien poses a risk of flight or a danger to the community." Id. at 224 (quoting Diouf, 634 F.3d at 1092). Importantly, the court emphasized that noncitizens "detained under § 1231(a)(6) are only entitled to a bond hearing after prolonged detention." Id. at 225 (emphasis in original). Applying the test set forth by the Supreme Court in Mathews, 424 U.S. at 355, to construe the procedural due process requirements, the court adopted a rule requiring a bond hearing in most cases after six months in custody. Id. at 226; see Diouf, 634 F.3d at 1091 (finding that the "regulations do not afford adequate procedural safeguards because they do not provide for an in-person hearing, they place the burden on the alien rather than the government and they do not provide for a decision by a neutral arbiter such as an immigration judge").[4]

---

[4] Unlike the Third and Ninth Circuits, the Sixth Circuit in Martinez v. Larose, 968 F.3d 555, 565 (6th Cir. 2020), declined to

In Rivera-Medrano v. Wolf, a district court in this circuit considered a factually analogous case. The court in that case applied the reasoning of the Third Circuit in Guererro-Sanchez, ultimately finding that the petitioner, who had been detained for eight months pursuant to a reinstated order of removal while pursuing withholding-only relief, was entitled to a bond hearing before an immigration judge where the government bore the burden of proving that the petitioner should not be released by clear and convincing evidence. Rivera-Medrano, No. 20-cv-194-JD, 2020 WL 1695628, at *2, *5 (D.N.H. Apr. 6, 2020).

Like the district court in Rivera-Medrano, this Court finds the reasoning applied by the Third Circuit in Guerrero-Sanchez compelling. For this reason, the Court need not address Petitioner's more particular argument that based on his status as a noncitizen proceeding with withholding of removal, the DHS regulations do not safeguard his constitutional rights because "officials serve as both the prosecutors who are charged with challenging [Petitioner's] defenses to removal . . . as well as the officials who must decide whether [Petitioner] must remained detained during the pendency of those proceedings." Pet'r's Cross-

---

"impos[e] a general rule that aliens detained under § 1231(a) must receive a bond hearing after a specific lapse of time[.]" The court was "reluctant to graft a bond-hearing requirement onto a statute absent language supporting such a requirement." Id. at 566 (citing Jennings v. Rodriguez, 138 S.Ct. 830, 843 (2018)).

Mot. 11; see Guerrero-Sanchez, 905 F.3d at 224 (finding "no basis in § 1231(a)(6) to fashion a class of aliens that is not explicitly enumerated in the provision" and that if it ordered relief only for noncitizens pursuing withholding only claims, it "would be acknowledging and distinguishing a specific class of aliens that is not ostensibly recognized anywhere in the text or legislative history of the INA").

The Government contends that the Supreme Court's decision in Guzman Chavez, issued after Guerrero-Sanchez and Diouf, confirms the Government's authority to detain noncitizens past the removal period without the opportunity for bond. Gov't Mot. 10; Gov't Reply 2-3. It argues that "[t]he Guzman Chavez court had the opportunity to read a constitutional limit into this provision, or to address any deficiencies in the regulatory scheme that provides for review of continued detention under this provision, but did not take any of those steps." Gov't Reply 2. Petitioner, on the other hand, contends that Guzman Chavez only determined a narrow statutory question unrelated to the due process concerns at issue here. Pet'r's Cross-Mot. 9.

The Court finds that Petitioner has the better of this argument. It is true that the Supreme Court in Guzman Chavez concluded that § 1231 "governs the detention of aliens subject to reinstated orders of removal, meaning those aliens are not entitled to a bond hearing while they pursue withholding of removal." 141

12

S.Ct. at 2280. But the question at issue in Guzman Chavez was not whether noncitizens pursuing withholding of removal are constitutionally entitled to a bond hearing. Rather, the Supreme Court resolved a circuit split concerning whether § 1226 or § 1231 applied to noncitizens, like Petitioner, who were subject to reinstated orders of removal and later sought withholding only relief. Id. The Court posited that "[i]f the answer is § 1226 . . . then the alien may receive a bond hearing before an immigration judge," but "[i]f the answer is § 1231 . . . then the alien is not entitled to a bond hearing." Id. Importantly, noncitizens detained pursuant to § 1226(a) "may generally apply for release on bond or conditional parole,"[5] id., and such hearings occur "at the outset of detention," Jennings v. Rodriguez, 138 S.Ct. 830, 847 (2018). See also § 1226(a)(2) ("Except as provided in subsection (c) and pending such decision, the Attorney General— (2) may release the alien on (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (b) conditional parole[.]"). Clearly, the primary holding of the opinion resolves a statutory application issue as to the authority for detention. See Guzman Chavez, 141

---

[5] As the Supreme Court noted in Guzman Chavez, this general rule is limited by § 1226(c), which requires detention for "certain criminal aliens and aliens who have connections to terrorism" where "release is permitted in very limited circumstances." 141 S.Ct. at 2280 n.2.

13

S.Ct. at 2280.  As to the Supreme Court's conclusions regarding bond, this Court reads the language in Guzman Chavez to suggest that unlike those noncitizens detained pursuant to § 1226(a), noncitizens detained pursuant to § 1231(a) are not entitled to a bond hearing under the express terms of the statute, though they would be if § 1226 governed that detention.  See id.

However, the Supreme Court did not separately analyze the due process considerations discussed by the Third and Ninth Circuits in Guerrero-Sanchez and Diouf, and therefore did not address those constitutional concerns related to prolonged detention.  While the Court noted the limitation read into § 1231(a)(6) in Zadvydas, it did not further discuss the bounds of § 1231(a)(6) in light of these other constitutional concerns.  Guzman Chavez, 141 S.Ct. at 2281.  Neither did it hold that its interpretation in Zadvydas represents the only construction of § 1231(a)(6).  Id. at 2281-82.  The Supreme Court may soon provide further guidance on this question,[6] but the Court does not read the Diouf-line of decisions as irreconcilably at odds with Guzman Chavez.  While language in Guzman Chavez suggests that the holdings of Diouf and Guerrero

---

[6] Two cases pending before the Supreme Court, Johnson v. Arteaga-Martinez and Garland v. Gonzalez, involve challenges to the Third and Ninth Circuit holdings that § 1231(a)(6) includes an implied right to a bond hearing after prolonged detention.

applied here may be vulnerable, this line of reasoning is not yet foreclosed.[7]

The Government also points to the First Circuit's decision in Reid v. Donelan, 17 F.4th 1 (1st Cir. 2021), for support of its position that Petitioner is not entitled to a bond hearing. Gov't Mot. 16; Gov't Reply 7. It argues that in Reid, the First Circuit rejected an argument that noncitizens detained under § 1226(c) are per se entitled to bond hearings after six months. Gov't Mot. 16. Given this result, the Government contends, "[i]t would be an odd and troubling result if individuals, such as Petitioner, who have reentered the United Sates after being removed, are entitled to shorter periods of detention pending removal that lawful permanent residents who have not yet been ordered removed." Id. at 16-17.

In Reid, the First Circuit found that the Supreme Court's opinion in Demore v. Kim, 538 U.S. 510, 530-31 (2003),[8] foreclosed

---

[7] Even if such language is read to foreclose an implicit reading of a bond requirement into the statute, Guerrero-Sanchez and Diouf strongly suggest that due process concerns may nevertheless require bond hearings in such circumstances. See Guerrero-Sanchez, 905 F.3d at 223 (finding that "it may be the case that the Due Process Clause prohibits prolonged detention under § 1231(a)(6) without a bond hearing" but "declin[ing] to decide" the question in favor of applying the cannon of constitutional avoidance); Diouf, 634 F.3d at 1086 (noting that "prolonged detention under § 1231(a)(6), without adequate procedural protections, would raise serious constitutional concerns" but applying the cannon of constitutional avoidance) (internal quotation marks and citation omitted)).

[8] In Demore, a noncitizen detained for about six months challenged the constitutionality of his mandatory detention under

15

the option of adopting a "firm six-month rule" for a bond hearing applying across the board to all noncitizens detained under § 1226(c). 17 F.4th at 7-8. It further declined to apply the <u>Mathews</u> balancing test, finding a "more direct message strongly implied by <u>Demore</u>." <u>Id.</u> at 8-9. But <u>Reid</u> dealt with § 1226(c), which explicitly requires detention of certain criminal noncitizens during the pendency of removal proceedings who "may <u>not</u> be released' . . . outside of certain limited circumstances." <u>Id.</u> at 4 (quoting <u>Jennings</u>, 138 S.Ct. at 837)).

Furthermore, even after declining to impose a six-month rule, the First Circuit noted that it was still possible "that in most individual cases, detentions of six months (or of even less time) might necessitate some type of hearing to see if continued detention is reasonably necessary to serve the statute's purposes." <u>Id.</u> at 8. The court also pointed out that even mandatory detention may violate the Due Process Clause "when it becomes unreasonably prolonged in relation to its purpose in ensuring the removal of deportable criminal noncitizens." <u>Id.</u>

---

§ 1226(c). 538 U.S. at 513-14. The Supreme Court held that § 1226(c) "governs detention of deportable criminal aliens <u>pending their removal proceedings</u>." <u>Id.</u> at 527-28 (emphasis in original). It explained that "[s]uch detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings[.]" <u>Id.</u> at 528. The Court pointed to statistics demonstrating that detention under this statute lasts roughly six weeks, which provided support for its holding that "[d]etention during removal proceedings is constitutionally permissible." <u>Id.</u> at 531.

16

(quoting Reid, 390 F. Supp. 3d 201, 215 (D. Mass. 2019)). Ultimately, "the Due Process Clause imposes some form of 'reasonableness limitation upon the duration of detention . . . .'" Id. at 7. Therefore, this Court does not agree that Petitioner would be afforded more process than a noncitizen detained pursuant to § 1226(c) and not yet subject to a removal order because due process concerns are present where prolonged detention has occurred.

Here, Petitioner has been detained for nearly eleven months. Although the appeal of his application for withholding only removal is now with the BIA, his proceedings are likely to last several more months. See Guzman Chavez, 141 S.Ct. at 2294 ("Studies have found that this procedure often takes over a year, with some proceedings lasting well over two years before eligibility for withholding-only relief is resolved.") (Breyer, J., dissenting). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Hernandez-Lara v. Lyons, 10 F.4th 19, 28 (1st Cir. 2021) (quoting Zadvydas, 533 U.S. at 695). "Under § 1231(a)(6), '[w]hen detention crosses the six-month threshold and release or removal is not imminent, the private interests at stake are profound' and 'the risk of erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial.'" Guererro-Sanchez, 905 F.3d at 225

17

(quoting Diouf, 634 F.3d at 1091-92).  To be sure, the Government has a strong interest in effectuating removal orders, which is arguably more acute at the post-removal stage.  See Guzman Chavez, 141 S.Ct. at 2290 (noting that noncitizens subject to reinstated orders of removal could pose increased flight risks).  But considering all of the circumstances in this case, the Court finds that Petitioner's detention has been prolonged, and applying the reasoning in Gurerro-Sanchez, also finds that Petitioner is entitled to a bond hearing before an immigration judge at which the government bears the burden of proving that the noncitizen should not be released on bond.  See Rivera-Medrano, 2020 WL 1695628, at *5 ("The remedy for prolonged detention is a bond hearing before an immigration judge at which the government bears the burden of proving by clear and convincing evidence that the alien should not be released on bond.").  Following the First Circuit's holding in Hernandez-Lara regarding the burden of proof for bond hearings under § 1226(a), for continued detention here, the Government must "either (1) prove by clear and convincing evidence that [Petitioner] poses a danger to the community or (2) prove by a preponderance of the evidence that [Petitioner] poses a flight risk."  10 F.4th at 41.

V.   CONCLUSION

For the foregoing reasons, Petitioner's Motion for Summary Judgment, ECF No. 7, is GRANTED; the Government's Motion to

18

Dismiss, ECF No. 4, is DENIED; and Petitioner's § 2241 Petition is ALLOWED, in part, and DENIED, in part. To the extent that Petitioner seeks immediate release, the Court DENIES the Petition. However, the Petitioner shall be afforded a bond hearing before an Immigration Judge at a date as soon as practicable.

IT IS SO ORDERED.

/s/ William E. Smith
William E. Smith
District Judge
Date: March 8, 2022